KANE *v.* THE SAVANNAH, FLA. & WESTERN RAILWAY CO.

BLECKLEY, C. J.—There was no abuse of discretion in granting a first new trial in this case.                    *Judgment affirmed.*
March 31, 1890.

New trial. Railroads. Damages. Negligence. Before Judge FALLIGANT. Chatham superior court. June term, 1889.

On December 7, 1885, the plaintiff, a conductor of defendant's freight-train, had his first and second right-hand fingers mashed by a coupling-pin, while trying to uncouple two of the cars in this train. He sued for damages on December 3, 1887, and recovered a verdict for $3,000 on February 11, 1889. The defendant moved for a new trial, which was granted, and the plaintiff excepted. The grounds for new trial were, that the verdict was contrary to law and evidence, and was excessive ; that the court charged, without proof to authorize such instruction, that, "If you should think, further, that the injury has resulted in a physical disability that diminished his earning capacity, he would be entitled to compensation for that" ; and because of newly discovered testimony. The plaintiff's evidence tended to show as follows :

He had been in defendant's employment since some time in 1882, and had been railroading for seven years. His train of twenty-two cars was bound for Savannah, and left Jacksonville at 6:15 or 6:30 in the evening, its regular leaving time being six o'clock. If plaintiff was

not mistaken, it was raining. The conductor has no time to inspect the cars; he checks his numbers, then goes to the office and gets his way-bills, and off he goes. The car-inspectors do not generally have time down there. There was no defect reported in the coupling of this train, which was made up in a hurry and left in a hurry. Nothing happened until they reached Callahan station, about an hour afterwards. They had eight cars of bricks to leave there; and the company's agent at that place directed plaintiff to put these cars on a track next to the depot platform, and to put his train on a side-track to have the main track clear for a passenger-train soon to pass. The crew of plaintiff's train consisted of himself and two brakemen, besides the engineer and fireman. He ordered one of the brakemen to go back and flag down the passenger-train, and the other to manage the switch (these duties being necessary to be performed), and was himself the only one left to uncouple the cars. The whole train was too long to go upon the side-track. A freight-train conductor was expected to couple and uncouple cars whenever emergency required it. Plaintiff went to make the uncoupling because there was no one else to do it, and because he was under the agent's instructions. It was his business to do anything that was to be done, flagging, switching, or anything else, in an emergency. All freight-train conductors did so. Plaintiff could uncouple cars; had often done so. Had the apparatus been in proper order, he would have done so without injury on the occasion in question. The engine was eight or nine cars off. Plaintiff gave the engineer the signal to come back, to give slack, and when this was done and the cars stopped still with their bumpers together, went with lantern in between them to uncouple. But what was used as a coupling-pin was not a coupling-pin proper, but a piece of the leg of a bumper, and was

bent. It had a ridge near the top. As he was trying to pull it out, the train moved, jerked the pin and caught his fingers between the ridge of it and the top of the bumper, inflicting the injuries complained of. Had the pin been in good order, it would have come out without trouble, and plaintiff would not have been hurt. The plaintiff could not say whether the moving of the cars which jerked the pin was by those next to the engine or the rest of the train. There was a down-grade in the track toward the south, which might have caused the cars to roll. The mashed fingers are useless. He suffered much, and still suffers, from his hand. He was kept from work for three months, during which time the company paid his expenses and salary. He then went back to work for defendant as a conductor, but did no coupling; worked nearly two years longer, and then was discharged for going to the Atlanta Exposition when he was on leave of absence for sickness. He then worked for other companies in different places, and is now storekeeper for the Central Railroad Co., at $45 per month. He was getting $70 per month when injured; afterwards his wages were raised to $80, at which he was working when discharged. The pin complained of was probably driven in the bumper, as it had to be driven out. An ordinary pin could be bent; this was about the same size as an ordinary one; it looked as if it had been hammered. Jerking of the cars sometimes bends coupling-pins. Plaintiff signed the report to the company of this injury, which was introduced in evidence. He did not state therein that the coupling-pin was the leg of a bumper, out of regard for the man in Jacksonville, who might thereby be brought into a bother with the company. Had not read the rules introduced, though they were accessible to him; had knowledge of some of their requirements, none of others therein. Did not inspect the pin on

going between the cars; there was nothing to attract attention to it.

The evidence for the defendant tended to show that the grade of the track at the place of the accident was about level, and there was a pretty good curve there; that conductors are not required to couple or uncouple cars, this dangerous duty being part of a brakeman's business, and the conductor having to give signals to the engineer, nor does it amount to a custom for them to couple or uncouple; that sticks are furnished to use in doing this; that the conductor was expected to know the rules, etc. The plaintiff made a report of this injury to the company, answering the questions propounded in a blank form furnished by the company for this purpose. In it he stated that the accident was caused by intaking slack of train to cut cars loose, and fingers got caught underneath pin. Then followed these questions and answers:

"State how accident occurred, giving full particulars; if injured in coupling cars, was he using coupling-sticks? were signals given? by whom? by whom received; and were they obeyed? was engineer handling engine? Report any defect in equipment that tended to the accident. (1) Accident occurred by intaking the slack to uncouple cars; the pin was knocked up. I caught hold of pin, but before I could pull it out, the slack was taken up and caught fingers underneath the pin. (2) Injured uncoupling cars. (3) Signals were given. (4) By conductor. (5) Received by engineer, and were obeyed. (6) Engineer was handling engine. (7) For some cause the pin would not come out when slack was given."

The defendant introduced the following of its rules in force at the time Kane was injured, and contained in the schedule, a copy of which he had:

"Each employee is hereby warned that, while on the tracks or grounds of these companies, or in working with or being in any manner on or with the cars, en-

gines, machinery or tools, he must examine for his own safety the condition of all machinery, tools, tracks, cars, engines, or whatever he may undertake to work upon or with, before he makes use of, or exposes himself on or with the same, so as to ascertain as far as he reasonably can their condition and soundness; and he is required promptly to report, either to the superintendent or to whoever may be his most accessible superior officer, any defect in any track, machinery, tools or property of these companies affecting the safety of any one in using or operating upon or with the same.    Great care must be exercised by persons coupling cars, inasmuch as the coupling apparatus of cars or of engines cannot be uniform in style, size or strength, is liable to be broken, and various causes render it dangerous to expose the hands, arms or persons of those engaged in coupling between them.    Conductors must keep as many coupling-sticks or forks in their train equipment as they have train-hands.    Jumping on or off trains or engines in motion, getting between cars in motion to uncouple them, and all similar acts, are dangerous, in violation of duty, and are prohibited.    Employees are warned that if they commit any of these acts, it will be at their own peril or risk.    Conductors are required to be on duty at least thirty minutes before leaving time.    They will inspect the condition of their trains and report to the master of transportation upon form No. T8.    They will also be on the platform of the station as much as possible."

The newly discovered testimony was, that the track grade towards Jacksonville from the place of the injury, was upward instead of downward; that the statement in the testimony for the defendant, that the track there was about level, was based upon an observation without taking the grade by measurement, this having been done since the trial; and the defendant's counsel concluded, from the allegation in the declaration that the train gave a sudden lurch or movement, that the plaintiff would attempt to prove that the engine imparted such movement, and so made no attempt to get

evidence to show the grade of the track, not seeing how it could be material.

CHARLTON & MACKALL, for plaintiff.

CHISHOLM, ERWIN & DUBIGNON, for defendant.